## GOHLMAN, LESTER & CO. v. ALLEN.*
(No. 8376.)

(Court of Civil Appeals of Texas. Galveston. June 12, 1923. Rehearing Denied Oct. 4, 1923.)

**1. Principal and agent ⬤⇒131—Error of shipper's agent in telegram to factors held chargeable to shipper.**

Error of bank acting as shipper's agent in sending telegram instructing factors to sell cotton, stating shipper's initials to be W. S. instead of W. F., *held* chargeable to the shipper.

**2. Factors ⬤⇒33—Error in telegram instructing factors to sell held not proximate cause of factors' noncompliance with instructions.**

That telegram directing sale of cotton gave shipper's name as "W. S. Allen," instead of "W. F. Allen," *held* not the proximate cause of factors' failure to sell the cotton as instructed, in view of facts showing that the factors in the exercise of ordinary care should have discovered the error, and should have known that the telegram referred to the cotton of W. F. Allen.

**3. Factors ⬤⇒33—Factors' failure to sell pursuant to instructions held negligence.**

Factors' failure to sell pursuant to telegram instructing the sale of cotton of "W. S. Allen" *held* negligence, though shipper's name was "W. F. Allen," in view of facts showing that in the exercise of ordinary care the factors should not have been misled by the error.

**4. Factors ⬤⇒33—Shipper held not contributorily negligent for failure to inform factors of error in instructions to sell.**

Where a bank acting as shipper's agent instructed cotton factors to sell cotton of "W. S. Allen," instead of "W. F. Allen," shipper's failure to inform factors of the error after reading factors' letter acknowledging receipt of instructions to sell cotton of "W. S. Allen" *held* not contributory negligence, since it was reasonable for the shipper to suppose that the use of the wrong initial was a clerical error on the part of the factors.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction November 21, 1923.

**5. Factors ☞33—Shipper held not contributorily negligent for failure to make further inquiry as to sale of cotton after instructing factors to sell.**

Shipper of cotton *held* not contributorily negligent as a matter of law in making no further inquiry as to the sale of the cotton between May 31st and September of the same year after giving instructions to sell.

**6. Factors ☞43—Finding that factors received letter instructing them to hold cotton until further instructions held not against weight of evidence.**

In shipper's action against cotton factors for failure to sell cotton pursuant to instructions, finding that factors received letter instructing factors to hold cotton for further instructions *held* not against the weight of the evidence.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by W. F. Allen against Gohlman, Lester & Co. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Cole & Cole, of Houston, for appellant.
Ball, Merrill & Ball, of Houston, and E. R. Surles, of Matador, for appellee.

LANE, J. This suit was instituted by W. F. Allen in the district court of Harris county, Tex., on the 26th day of September, 1921, against appellant, Gohlman, Lester & Co., a partnership composed of S. L. Gohlman and J. E. Lester, to recover the sum of $3,555.05 alleged to be due him because of the failure of appellants, Gohlman, Lester & Co., to carry out instructions alleged to have been given by him to said firm for the sale of 24 bales of cotton which he had shipped to the firm.

The plaintiff alleged that the defendants were cotton factors, and as such made it a business to solicit and receive cotton from producers and shippers, charging a commission for their services in effecting a sale of the cotton for their customers, and, in the meantime, pending a sale, causing the cotton to be stored and insured for certain charges as set out in the petition; that, on or about April 6, 1920, plaintiff shipped 24 bales of cotton from Motley county, Tex., to defendants at Houston, Tex., with instructions that appellants should hold the same for selling instructions; that on May 31, 1920, plaintiff, through his duly authorized agent, First National Bank of Matador, Tex., instructed defendants by telegraph to sell said cotton immediately; that the cotton market at such time was 40¼ per pound, and that the cotton could have been sold on the date of instructions, or within a reasonable time thereafter, which plaintiff alleged was 20 days. Then follow allegations as to weight and value of the cotton and what it would have realized if sold according to instructions, followed by allegations that the defendant failed and refused to carry out the instructions and sell the cotton, and that thereby they became liable to plaintiff in the difference in the market value of said cotton as of May 31, 1920, or within a reasonable time thereafter, and 20 days would have been a reasonable time, and the price received in May, 1921, at which later date the cotton was sold; the petition closing with a prayer for a recovery of $3,555.05, with interest thereon at 6 per cent. from July 20, 1920.

The defendants answered by general demurrer and general denial, and by specially pleading that they received no notice to sell plaintiff's cotton, but, if it should be held otherwise, then, and in that event, they say that the plaintiff, in failing to make any further inquiry about his cotton for four months, greatly exaggerated his damages, and that, if he had followed up any instructions, if any, he had given, or made any inquiry about his cotton, within a reasonable time after May 31, 1920, as it was his duty to do, the cotton market not having fallen until on or about the middle of August, 1920, his cotton would have been sold without loss, and certainly at a much less loss than sustained by waiting as long as he did to make inquiry about his cotton; and defendants further plead that, the plaintiff having received actual notice that his cotton was not sold up to September 30, 1920, at which time the defendants asked for a recommitment if he desired it sold, and he thereafter delayed until the summer of 1921 to order it sold, in no event could the measure of damages be greater than the difference between the market value in May, 1920, and on or about September 30, 1920, and also pleaded specially by trial amendment that, it having developed in the evidence that the only notice given defendants to sell the cotton was a telegram from the First National Bank of Matador, Tex., in which the defendants were instructed to sell W. S. Allen's cotton, and appellants having acknowledged said telegram and stated that they would proceed to sell W. S. Allen's cotton, and it having developed that both the plaintiff and his agent, said First National Bank, had received and read said letter, and they not having advised defendants at once, as it was their duty to do, of the error, that they were guilty of contributory negligence, which operated as a proximate cause of the damages, if any, sustained.

The cause was tried before the court without a jury, and judgment was rendered for the plaintiff against defendants for the sum of $1,699.57, with interest thereon from the 1st day of August, 1920, a total sum of $1,873.82. From the judgment so rendered the defendants S. L. Gohlman and J. E. Lester have appealed.

It was shown that appellants were cotton factors at Houston, Tex.; that on or about the 6th day of April, 1920, appellee shipped to appellants 24 bales of cotton from the town of Matador, in Motley county, Tex., classed as follows: First lot, one good middling, 3 strict middling, 4 middling, and 3 strict low middling, aggregating 11 bales. Second lot, one middling spotted, one middling tinged, one strict low middling spotted, 5 low middling, aggregating 8 bales. Third lot, 3 good ordinary and 2 low ordinary, aggregating 5 bales. On the 6th day of April, 1920, the day on which said bales of cotton were shipped from Matador, at the request of appellee, Eugene Sanford, cashier of the First National Bank of Matador, wrote and handed to appellee the following letter:

"Matador, Texas, April 6th, 1920.
"Gohlman, Lester & Co., Houston, Texas— Gentlemen: I hand you herewith B/L # 163 covering 24 (twenty-four) bales of cotton shipped you to-day by W. F. Allen. Cotton is marked W. F. A. shipped you through flat. Please hold this cotton for selling instructions, remitting this bank proceeds of sale when sold.
"Yours truly,        Cashier."

At the time Sanford delivered this letter to appellee, appellee told Sanford that he would inclose it with the bill of lading for the 24 bales of cotton, and mailed it to appellants at Houston. Appellee testified that he inclosed said letter together with the bill of lading for his 24 bales and bills of lading for cotton of some other parties who had also shipped their cotton to appellants. Appellants testified that said letter was not received by them. On the 9th day of April, 1920, Gohlman, Lester & Co. wrote appellee as follows:

"April 9, 1920.
"Mr. W. F. Allen, Matador, Texas—Dear Sir: We are to-day in receipt of the following B/L, which you were kind enough to send us: 2 bales F. M. Casey, 10 bales Mrs. H. B. Stephens, 24 bales yourself, 5 bales H. A. Stephens. In the absence of instructions to the contrary, we have marked this cotton to be held for further orders, and shall send class and weight as soon as the cotton is received. We thank you for the interest in our behalf and assure you of our best efforts at all times to please you. Awaiting your further favors, we are,
"WHB—G      Very truly yours."

On the 10th day of April, 1920, appellee wrote appellants as follows:

"The First National Bank.
"Matador, Texas, April 10, 1920.
"Gohlman, Lester & Co., Houston, Texas— Gentlemen: On the 6th I mailed you a B/L covering 24 B/C. When this cotton arrives please send me classification of grades to Whiteflat, Texas, and wait for instructions to sell. Thanking you very much for your atten-
254 S.W.—64

tion in this matter and assuring you I appreciate past favors, I remain,
"Yours very truly,
"[Signed]   W. F. Allen,
"W. F. Allen,
"Whiteflat, Texas."

On the 17th day of April, 1920, appellants wrote appellee as follows:

"April 17, 1920.
"Mr. W. F. Allen, Whiteflat, Texas—Dear Sir: We acknowledge receipt of yours of the 10th inst., wish to say as soon as the 24 bales of cotton are delivered to us we will send you class and weight on same. Up to this writing we have not received it. Awaiting your further favors, we desire to remain,
"Very truly yours."

On the 17th day of May appellee wrote appellants:

"The First National Bank.
"Matador, Texas, May 17, 1920.
"Gohlman, Lester & Co., Houston, Texas— Gentlemen: On April 6th, I sent you B/L covering 24 bales of cotton marked W. F. A. and have not heard from same, please advise me if you have heard from it, at your earliest convenience and oblige,
"Yours very truly,
"W. F. Allen, Whiteflat, Texas."

On May 21, 1920, appellants wrote appellee:

"Gohlman, Lester & Co., Cotton Factors.
"Houston, Texas, May 21, 1920.
"Mr. W. F. Allen, Whiteflat, Texas—Dear Sir: We have yours of the 17th instant, and in answer thereto, will say, that we mailed sheets to Roaring Springs on the 24 bales of cotton, which you were kind enough to ship us, and this is the reason why you have never received them. We take pleasure, however, in inclosing herein copy of this class sheet, and hope the delay has not inconvenienced you any. Awaiting your further favors, we are,
"Yours truly,     Gohlman, Lester & Co.
"WHB/CA.             W. H. B."

May 31, 1920, the First National Bank of Matador wired appellants as follows:

"Matador, Texas 935 AM May 31 1920.
"Gohlman, Lester & Co., of Houston, Texas.
"Sell immediately all of cotton shipped T. L. Kennedy by A. B. Bryan and by W. S. Allen remit proceeds of sale to this bank.
"First National Bank     955AM"

May 31, 1920, appellants wrote the First National Bank as follows:

"May 31, 1920.
"First National Bank, Matador, Texas—Dear Sirs: Answering your wire of to-day's date instructing us to sell the T. L. Kennedy cotton, as well as the A. B. Bryan and W. S. Allen cotton, desire to say we have the samples covering this cotton on the table for sale and will effect sale as soon as conditions will permit. Awaiting your further favors, we desire to remain,
"WHB/G      Very truly yours."

No further communications are shown to have taken place between the parties interested until on the 30th day of September, 1920, at which time appellee wrote appellants as follows:

"Whiteflat, Texas, September 30th, 1920.

"Gohlman, Lester, Houston, Texas—Gentlemen: I am getting very anxious to know what you have done with my cotton which I shipped to you in March last. I got my grades on it which was very satisfactory. I asked you to sell this cotton on arrival, and have never received any returns from same. I want you to write me by return mail as to what you have done with this cotton, I have written you several times and have got no reply, so I want to know what you have done with it. Hoping to hear from you by return mail, I am yours very respectfully,                    W. F. Allen."

In reply to appellee's letter of September 30, appellants wrote:

Gohlman, Lester & Co., Cotton factors.

"Houston, Texas, Oct. 6, 1920.

"Mr. W. F. Allen, Whiteflat, Texas—Dear Sir: We have yours of the 30th ult., and in answer to same will say that when your 24 bales of cotton were shipped to us along in April you failed to give us any instructions concerning sale of same and upon acknowledging receipt of the B/L we asked what your wishes were in the premises and up to this date we have never received selling instructions from you. We infer from your letter, which we have before us, it is your desire to offer for sale, but since the market has broken away somewhat since it was shipped we fear to offer it until we have a commitment from you. We will thank you to advise us at once if it is your desire to sell and we will be pleased to follow your instructions.

"Very truly yours,

"Gohlman, Lester & Co.

"WHB–G                    W. H. B."

November 10, 1920, the First National Bank wrote appellants as follows:

"The First National Bank.

"Matador, Texas, Nov. 10th, 1920.

"Gohlman, Lester & Co., Houston, Texas— Gentlemen: On April 6, 1920, W. F. Allen shipped you 24 bales of cotton B/L #163 marked W. F. A. through flat. On May 31st, 1920, we ordered this cotton sold and to date have not heard anything of it. Wish you would look this shipment up and see if it has ever been sold and if so where the proceeds went.

"Very truly yours, Eug. Sanford, Cashier."

No further correspondence or communications were had between the parties until the 19th day of May, 1921, at which time the First State Bank of Matador wrote appellants as follows:

"The First State Bank.

"Matador, Texas, May 19, 1921.

"Messrs. Gohlman, Lester & Co., Houston, Texas—Gentlemen: One of our customers, Mr. W. F. Allen, has with you 24 bales of cotton and we will ask that you sell this cotton at once remitting us the proceeds. Please make a special effort to dispose of this cotton for us promptly and make returns as the party is very anxious to get the matter closed up. Thanking you for all past favors, we are,

"Yours very truly,

"F. C. Bourland, Vice President."

May 24, 1921, appellants sold 22 bales of appellee's cotton; 2 bales of the same remained unsold at the time of the trial of this cause in May, 1922. It was shown that, although appellants had notified appellee, on or about October 15, 1920, that his cotton had not been sold, and that appellants would wait further instructions as to its disposition, appellee gave no further instructions until he did so through the First State Bank of Matador on May 19, 1921, and that after receipt of said instructions through said bank, his cotton was promptly sold. It is shown that if the cotton of appellee had been sold in a reasonable time after the receipt of the telegram from the First National Bank of date May 31, 1920, instructing the sale of the cotton of T. L. Kennedy, A. B. Bryan, and W. S. Allen, appellee would not have suffered the loss of which he complains. It is shown that lot No. 1, hereinbefore described, consisting of 11 bales of high-grade cotton belonging to appellee, could have been sold in a short time after receipt of said telegram from the bank, but it was not shown that any of the other lots, consisting of the 13 bales of appellee's cotton, could have been sold prior to the 15th day of October, 1920, the time appellants advised appellee that they had not sold his cotton, and asked for further instructions, but, to the contrary, W. H. Bains, office manager of appellants, and appellant J. E. Lester testified that the other two lots of appellee's cotton, consisting of one tinged, 2 spotted, and 5 low-grade bales of cotton, 13 in all, could not have been sold prior to October 15, 1920, the time appellee was notified that his cotton had not been sold, and that appellants wanted further instructions relative to the disposition to be made thereof. Their testimony on this point stands undisputed or uncontradicted by any witness or circumstance.

Appellee Allen testified that he inclosed the letter written by the cashier of the First National Bank of Matador of date April 6, 1920, in the same envelope covering the bills of lading, the receipt of which was acknowledged by appellants by their letter of April 9, 1920. He also testified that he saw the letter written by appellants to the bank of date May 31, 1920, saying that they had received the order to sell cotton of Kennedy, Bryan, and W. S. Allen, and that they would make sale as soon as conditions would permit; that he waited, thinking that he would get returns of the sale of his cotton, and, not having gotten any such returns, he wrote

or caused to be written two letters about July 1, 1920, addressed to appellants, asking them about his cotton.

The witness W. H. Bains, office manager for appellants, testified that he could not recollect having ever seen the letter written by the cashier of the bank of date April 6, 1920, or the two letters said to have been written about July 1, 1920; that if he had received such letters he would have followed the instructions given in the first, and that all of them would have been answered; that they always answered such letters; that had such letters been received they would have been placed in the files of the account of appellee; that every letter received is filed alphabetically and for the particular party to whom the letter is addressed or from whom it may be received; that it would not be reasonable that these letters could have come from the same man about his business and be left out of his files; that if the letters said by appellee to have been written and mailed in July, 1920, came to their office they were not called to his attention; that all selling instructions are given precedence over everything else in the office; that, had the wire of date May 31, 1920, instructed the sale of W. F. Allen's cotton instead of W. S. Allen's cotton, it would have had prompt attention, but, as they had no cotton for W. S. Allen, they did not trouble themselves to notify the First National Bank of Matador that they had no cotton of W. S. Allen, and to get information as to what Allen's cotton was referred to in the wire; that, if the bank, on receipt of their letter saying that they would sell W. S. Allen's cotton, had answered the same, and stated that the name of W. S. Allen was an error, and that the right name was W. F. Allen, they would have investigated and discovered the true facts.

It was shown that appellants made no effort to inform themselves as to what Allen was intended by the wire of May 31, 1920, which came from the bank at the town of Matador, at which place they had theretofore addressed appellee, W. F. Allen. It was shown that, notwithstanding W. F. Allen, by his letter of the 10th of April, 1920, requested that a statement of the weights and classification of his cotton be sent to him at his post office address at Whiteflat, Tex., and notwithstanding appellants had a file showing Matador as the shipping point of appellee and Whiteflat as his post office address, they addressed him one time at Paducah and at another time at Roaring Springs, Tex. It was not shown with what files, if any, the wire received by appellants to sell W. S. Allen's cotton, or their reply thereto, were filed, although both the witness Bains and Lester testified that a file was kept of all such communications, and especially instructions for sales. Mr. Bains, testifying further, said:

"We could not afford to look through our files and see what Allen was referred to for the reason that if we were to do that I might sell somebody's cotton for whom I had no authority."

Appellant J. E. Lester testified that he had no recollection of the receipt of the letter written by the Matador bank of date April 6, 1920; that he remembered the receipt of the wire to sell of date May 31, 1920; that during the season they had ten Allens on their books, none of whom, however, resided at Matador or Whiteflat except W. F. Allen, who shipped his cotton from Matador; that he never received the letters which appellee said he wrote between May 31, 1920, and September 30, 1920. He testified further that his firm dated every telegram, every letter and bill of lading received by them, and that they kept a file of each man's correspondence, and that such correspondence is placed in such files; that they had a file for W. F. Allen of Whiteflat, Tex., which was marked "W. F. Allen, Whiteflat"; that he looked through this file, and that neither the letter written by the Matador bank, of April 6, 1920, nor the letters which W. F. Allen says he wrote between May 31, and September 30, 1920, were found; that they were not in such files; that his firm's correspondence was very voluminous, and therefore he would not attempt to state from memory whether he had or had not received a particular letter, and that his testimony about not receiving the letters inquired about was based on his recollection, and on his file records not disclosing any such letters, and their method of doing business.

The trial judge found that the letter written by the cashier of the Matador bank of date April 6, 1920, was inclosed with the bill of lading sent by appellee to appellants, and that appellants did receive the same; that the freight bills delivered to appellants showed that appellee's cotton was shipped from Matador, Tex., on April 6, 1920; that the evidence is insufficient to justify a finding that appellee wrote any letters to appellants about his cotton after the wire of May 31, 1920, was sent, until the 30th day of September, 1920; that by the receipt of the wire of May 31, 1920, appellants knew, or by the exercise of reasonable diligence should have known, and could have known, that such telegram was intended as an order for the sale of the cotton belonging to appellee, W. F. Allen; that, if appellants had any doubt as to what cotton was referred to in said telegram, it was their duty to make inquiry of the First National Bank of Matador as to what cotton was referred to by said telegram, and that no such inquiry was made; that appellants were negligent in failing and refusing to sell appellee's cotton in response to the instructions contained in the wire of May 31, 1920; that appellee was shown the letter written by appellants to the First Na-

tional Bank of Matador of date May 31, 1920, in answer to said wire, and that both appellee and the bank were justified in relying upon that letter as an expression of intention on the part of appellants to sell appellee's cotton; and that neither appellees nor said bank were negligent in failing to take any action in respect to said cotton prior to September 30, 1920, at which time appellee wrote appellants making inquiry about his cotton, or prior to October 15, 1920, the date on which they received appellants' reply to said letter of September 30th.

The court also found that the 11 bales of good cotton belonging to appellee could have been sold by appellants on or about the 7th day of June, 1920, and that the loss sustained by appellee by reason of appellants' failure to make such sale was $1,102.98; that appellants could have sold the 3 bales, consisting of one bale of middling spotted, one bale of middling tinged, one bale of strict low middling spotted, in June, 1920, and that the loss sustained by appellee by reason of appellants' failure to make such sale was $263.04; that appellants could have sold the five bales of strict low middling on or before August, 1920, and that the loss suffered by appellee by reason of appellants' failure to make such sale was $286.63, and that, by reason of the failure of appellants to sell said cotton in June and August, 1920, appellee was compelled to pay on said 19 bales of cotton up to October 15, 1920, the sum of $47, making a total loss so sustained of $1,-699.55; that it was the duty of appellee, within a reasonable time after the receipt of appellants' letter of October 6, 1920, to advise appellants of his wishes as to the disposition of his cotton.

From the facts shown and the facts found by the court he filed his conclusions of law as follows:

"(1) I conclude as a matter of law that the defendants breached their contract with plaintiff and were guilty of negligence in failing to sell the cotton as soon after receipt of the telegram of May 31, 1920, as the same could reasonably have been sold.

"(2) I conclude that plaintiff was not guilty of contributory negligence up to October 15, 1920, but that he is not entitled to recover on account of the depreciation in the market after that date.

"(3) I conclude that plaintiff suffered damages on account of breach of contract and negligence of the defendants as above set out in the sum of $1,699.55, and that he is entitled to recover that amount, together with interest thereon from the date of the accrual of the respective items of damage at the rate of 6 per cent. per annum, and that the total amount of plaintiff's recovery should be $1,699.55 principal and $178.45 interest, making a total of $1,876.00, for which amount I have awarded judgment."

Notwithstanding the several losses found by the court as having been suffered by appellee aggregated the sum of $1,878.10, judgment was rendered for $1,873.82 only, as herein before stated. However, as no complaint of this error is made by appellee, we shall take no further notice of same. Gohlman and Lester have appealed, and in their brief they summarize their assignments of error as follows:

"The court erred in finding (a) that appellants were guilty of negligence in not selling the cotton on or about or soon after the date of the telegram, May 31, 1920, and (b) in not ruling that appellee's erroneous sending the telegram was at least a concurrent cause of the damage defeating his recovery, and (c) in not holding that both the appellee and his agent, the bank, were guilty of contributory negligence bringing about the loss, in not correcting the error on receipt of appellants' letter of May 31, 1920, which showed on its face the error of transmission which had occurred in the bank's telegram, and (d) the holding that the appellee was not guilty of contributory negligence in not making inquiry or following up his defective instructions to sell within a short time after May 31, 1920, as soon as it became evident to him that appellants for some reason would not carry out instructions, and by such negligence that he contributed to the damage, or at least failed to diminish it, and (e) that fact finding 3 of the court that appellants received the letter from the cashier of the bank, originally transmitting bills of lading covering appellee's cotton to appellants, was so against the great weight and preponderance of the evidence as to be manifestly and clearly wrong, and (f) in holding that 13 bales of appellee's 24 bales could have been sold prior to October 15, 1920."

Assignments (a), (b), (c), and (d) are so inseparably interwoven that we shall not undertake to discuss and dispose of them separately, but shall dispose of them in a general discussion of the several matters complained of thereby.

[1-3] The error in inserting in the telegram of May 31, 1920, the name of W. S. Allen, instead of W. F. Allen, as was intended, was clearly the error of appellee's agent, and was chargeable to him, and it would follow that, if such error was the proximate cause of appellants' failure to sell appellee's cotton as instructed, appellee should not be permitted to recover in this suit. We cannot, however, agree with appellants that they were misled by the insertion of the name of W. S. Allen in the telegram where the name of W. F. Allen was intended. From the facts shown we think it is clear that had appellants exercised ordinary care, such care as a person of ordinary care and prudence would have exercised under like or similar circumstances, they would have discovered the error mentioned, and in such circumstances would not have been reasonably misled as to whose cotton was referred to in said telegram. The undisputed facts show that appellants had received from appellee W. F. Allen the bill of lading for his 24 bales

of cotton, together with the bills of lading of several other parties, inclosed in the same envelope, early in April, 1920; that they took appellee to be the "king bee" in the several shipments, and on the 9th day of April, 1920, they wrote W. F. Allen at Matador, the initial point of shipment, that the bills of lading had been received, and that upon arrival of the cotton it would be held subject to further orders; that appellee wrote appellants on the 10th day of April, 1920, to send him a statement of the weights and classification of his cotton to his post office at Whiteflat, Tex.; that, notwithstanding such instructions, and notwithstanding appellants kept a folder marked "W. F Allen, Whiteflat," in which they filed or kept communciations received from W. F. Allen, who shipped his cotton from Matador, Tex., and with whom appellants had corresponded with reference to his cotton at Matador, appellants carelessly mailed the statements requested to W. F. Allen, Roaring Springs, Tex. It was shown that, although appellants had received the telegram of May 31, 1920, from a bank at Matador, Tex., the point from which appellee's cotton was shipped, and to which appellants had addressed their letters to appellee, and from which place they had received communications from appellee relative to his cotton, they took no steps whatever to inform themselves as to what Allen reference was made in such important telegram. It was shown that while they had the names of several Allens on their books none of them were from Matador or that vicinity, and that they did not have the name of W. S. Allen on their books. It is apparent, we think, that, had appellants exercised the slightest degree of diligence, or such diligence as the law would require under the circumstances, they would have discovered what Allen and what cotton was referred to by said telegram of May 31, 1920, if they did not in fact know who was referred to therein. Having reached the conclusions above expressed, we further conclude that the error in the name in the telegram could not reasonably have misled appellants as to what cotton they were instructed to sell.

[4] What we have already said would be sufficient, we think, to dispose of the further contention that, after appellee had seen the letter of appellants to the First National Bank of Matador in answer to its instructions to sell his cotton, in which they stated that they had the samples of the cotton of A. B. Bryan, T. L. Kennedy, and W. S. Allen on the table, and would sell said cotton as soon as conditions would permit, he should have advised appellants of the error in the initial of the Allen referred to in said letter, and that his failure to do so was such an act of negligence on the part of appellee as would constitute contributory negligence on his part, resulting in the loss or injury of which he complains. It is clearly apparent that appellee did not know that the telegram of May 31, 1920, contained the name of W. S. Allen instead of his name W. F. Allen when it was sent to appellants, and that the letter in reply thereto did not inform him of such error. It was therefore reasonable for him to suppose from all the existing facts and circumstances that appellants knew it was his cotton which the bank had ordered sold by the telegram, and that the use of the name of W. S. Allen instead of W. F. Allen was a clerical error upon the part of the scribe who wrote the letter for appellants in reply to said telegram, and in such circumstances it was not necessary for him to call their attention to the fact that it was the cotton of W. F. Allen which the bank had ordered sold and not that of W. S. Allen, the name given in their letter.

By assignment (d) appellants arbitrarily assume that it became evident to appellee that appellants, for some reason, would not carry out instructions to sell his cotton, and upon such assumption insist that the court erred in holding that appellee was not guilty of contributory negligence in not making inquiry of appellants as to why his instructions were not carried out. We are not prepared to agree with the contention of appellants that the undisputed evidence shows that it became evident to appellee at any time prior to October 1, 1920, that his instructions to sell were not carried out, or that the finding of the court to the contrary was so against the weight and preponderance of the evidence as to be manifestly wrong. Appellee testified as follows:

"Of course, after I had Mr. Sanford send that telegram, I waited thinking all the time I would get returns on it after it was ordered sold; waited, I think, until July, and didn't get any returns—didn't hear from them. I don't think I heard from them any more. I did not hear from them in July. I got Mr. Patton then, the county clerk, to write. Mr. Patton is the county clerk of Motley county, at Matador. I asked him or told him to write a letter to Gohlman, Lester & Co. concerning this cotton. I told him to write and have them to send the proceeds of that cotton in. I went to Mr. Patton because it just looked like I would not get any hearing from them or couldn't get nothing from them no way and I was just getting first one and another to write for me, and I just got him to write for me. He wrote the letter. I think when I first struck Mr. Patton he was on the street, and I talked to him about it, and he said, 'I will go write the letter.' I could not swear that I saw him write the letter. He went right straight back to the courthouse. Subsequent to the date I spoke to Mr. Patton I went north and went up to Erath county. I left home, I think, about the 6th day of August, and got back the 14th or the 15th day of September."

It is apparent from the testimony quoted that it was not the failure of appellant to

sell appellee's cotton of which he was complaining, but a failure to get returns of such sale. There is no evidence that he anticipated that his instructions as to the sale were not carried out, but his testimony indicates that his worry was about delay in getting returns.

We have already said that we do not think the letter of appellants acknowledging receipt of the telegram of May 31, and in which they said they would sell the cotton of W. S. Allen, furnished appellee with any information that there was in fact any defect or error in said telegram, as he knew such facts as would reasonably lead him to suppose that appellants understood that it was his cotton which was referred to in said telegram. He could not reasonably have thought from the letter of appellants that they were laboring under a misunderstanding as to whose cotton was referred to by said telegram. However, appellants' contention goes further, and is to the effect that in any event appellee was bound to know, or as a matter of law was charged with knowing, that for some reason appellants were not making sale of his cotton as instructed, and, so knowing, he should have made inquiry within a reasonable time as to why such instructions were not being carried out, and that under such circumstances his failure to make such inquiry was as a matter of law contributory negligence.

[5] For the reasons above expressed we are not prepared to hold that the court erred in refusing to find and hold that appellee was, as matter of law, guilty of contributory negligence in not making further inquiry as to the sale of his cotton between May 31, 1920, and September, 1920.

We have carefully considered the authorities cited by appellants to sustain the contention last discussed, and have reached the conclusion that none of them apply to the facts as shown in the present case.

By assignment (e) as summarized, it is insisted that the court erred in finding and holding that appellants received the letter written by Sanford, cashier of the First National Bank of Matador, of date April 6, 1920, in which it was said:

"I hand you herewith B/L No. 163 covering 24 (twenty-four) bales of cotton shipped you today by W. F. Allen. Cotton is marked W. F. A. Shipped you through flat. Please hold this cotton for selling instructions, remitting this bank proceeds of same when sold.
  "Yours truly,    Cashier,"

in that such finding was so against the great weight and preponderance of the evidence as to be manifestly and clearly wrong. We are not prepared to hold that the court erred in the finding complained of. The undisputed evidence shows that the letter in question was written by Sanford, and that it was handed to appellee, who told Sanford that he

would inclose it with the bills of lading and mail same to appellants. Appellee testified that he mailed the bills of lading for his cotton and the letter·in question in the same envelope addressed to appellants at Houston. Appellants acknowledged receipt of the bills of lading which appellee said he inclosed with the letter by their letter to appellee of date April 9, 1920, hereinbefore set out. Neither Bains nor Lester, who testified in behalf of appellants, had any personal recollection as to whether the letter was received by appellants, but they both testified that they knew the letter was not received by appellants for the following reasons: (1) Because if it had been received, under the business rules of the firm, it would have been promptly answered and it was not so answered; and (2) if it had been received, it would have been filed with the other correspondence between appellee and themselves, and a search of said file showed that there was no such letter therein.

[6] In view of the evidence showing that appellants were guilty of an act of carelessness with reference to their correspondence with appellee, in that, although they had a file which would show his true address, they mailed some important papers to him at Roaring Springs, a place where he did not reside, and, in view of the fact that it was shown that after the receipt of the telegram of May 31st appellants made no effort whatever to inform themselves' whose cotton was referred to in said telegram, we are not prepared to say that the trial court's finding that appellants did receive the letter in question was so against the great weight and preponderance of the evidence as to be clearly wrong.

We agree with appellants that there was no evidence to show that appellants could have sold any of the spotted, tinged or low-grade cotton belonging to appellee prior to October 15, 1920, but, to the contrary, the undisputed testimony of both Bains and Lester was that such cotton could not have been so sold. This being true, we hold that appellee was not entitled to a judgment in his favor against appellants for the sum of $549.67 as a loss suffered by him on account of the failure of appellants to sell said cotton prior to October 15, 1920; nor was he entitled to a judgment for the sum of $19.80 adjudged to him for the charges he paid for storage of the 8 bales of low-grade cotton which could not have been sold prior to said 15th day of October, 1920, the two sums aggregating the total sum of $569.47, nor to interest awarded on said sum.

Having reached the conclusion as above expressed, the judgment is here reformed, deducting the said sum of $569.47 and interest awarded thereon from the judgment, and as so reformed the judgment is affirmed.

Reformed and affirmed.